·Argued November 18, 1920, affirmed January 18, 1921.

## POYNTZ *v*. HOLMAN TRANSFER CO.

(194 Pac. 851.)

**Master and Servant—Evidence Held Insufficient to Show Agreement to Pay Percentage of Profits for Services.**

1. In an employee's action to recover a percentage of profits, claimed to constitute part of his compensation, evidence *held* insufficient to show that defendant agreed to pay any share of profits in addition to salary paid.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.

The defendant is an Oregon corporation, with its principal office in the City of Portland. In November, 1910, M. D. Poyntz was employed as its secretary and cashier, at a salary which was paid from month to month, and he continued in its employ until September 1, 1916. On February 28, 1913, the defendant addressed Poyntz the following letter:

"In line with our recent conversation along the lines of compensation for your services for the current year, beg to confirm herewith as below:

"You to draw monthly salary of two hundred dollars ($200.00), and at the close of the year's business take 10% of the net profits, if said profits do not equal six hundred dollars ($600.00), equal to fifty dollars ($50.00) per month, I then guarantee to pay you the difference to equal said amount, or, in other words, will guarantee you three thousand dollars ($3000.00) for the year's compensation.

"I further guarantee should ·your share, including salary, not exceed three thousand dollars ($3,000.00), to give you as a bonus the sum of one hundred and fifty dollars ($150.00) additional."

About this time the defendant borrowed $45,000, upon which it agreed to pay interest at 6% per annum, and used the money to purchase four lots in

Block 205, Couch's Addition to the City of Portland, and since that date has paid the interest, taxes, and other charges levied against the property from and out of its earnings. On January 18, 1911, M. D. Poyntz executed to the defendant his promissory note for $1,375, payable one year after date, with interest at 6% per annum. On January 18, 1916, the defendant waived the interest then accrued, and this note, with interest from that date, is now due and owing to the defendant. Prior to the commencement of this suit, M. D. Poyntz demanded a settlement and accounting with the defendant, which it refused. All of the records and accounts of the defendant corporation from January 1, 1916, to September 1, 1916, are in its possession and control.

This suit was commenced by M. D. Poyntz on October 25, 1916, in which he prays that the defendant be required to account for the net profits ''expended on account of said money borrowed and on account of said real property and for said net profits from the first day of January, 1916, to the first day of September, 1916,'' and that after offsetting and deducting the amount of the note, plaintiff should then have judgment for the amount of any of the 10% profits remaining. An answer was filed October 28, 1916, in which defendant admits the employment and payment of the 10% profits to January 1, 1915, after which date it alleges that there was no agreement whereby the plaintiff should have, or the defendant should pay, any of the net profits; that the plaintiff kept all the books, rendered all financial statements, and never made any such demand until after he left its employ; that on January 1, 1916, they entered into a new agreement whereby his salary was reduced - and he was not to have or receive any portion of the

profits of the business. Defendant also pleads the execution of the note and prays for judgment for its amount, with interest from January 1, 1916, and attorney's fees. M. D. Poyntz died about December 1, 1916, and on November 27, 1917, a reply was filed by Anna M. Poyntz, as administratrix of his estate, in which plaintiff alleges:

"M. D. Poyntz had knowledge that the expenses thereon [meaning the interest and taxes on the real property] were being paid out of the net profits of defendant's business and believed that he would become entitled to, and receive, a 10% interest in the said property when the same was paid for."

Before any testimony was taken, counsel for defendant stated in open court that a demurrer had been filed to the complaint upon the ground that—

It "did not state facts sufficient to constitute a cause of suit in equity; and my point on that is that it is properly a trial at law, * * . It is not a case in equity, does not involve an examination of accounts, and it is not for the purpose of avoiding a multiplicity of suits. * * It should be at law, and I want to reserve my rights on this point."

We assume that such a demurrer was filed, but it is not in the record here.

After the taking of testimony the court found that from December 31, 1914, until September 1, 1916, Poyntz' compensation "was by mutual agreement only a certain salary, with no part of the profits of defendant's business"; that defendant paid him an agreed salary with 10% of the net profits of the business from November 18, 1910, to December 31, 1914; that the purchase of the lots was made for the use and benefit of the defendant in the course of its business, and that Poyntz, as its bookkeeper, entered and carried the amount of the borrowed money as liability

and the interest and taxes as an expense, which he deducted from the gross earnings, and computed the 10% profits, which were paid to him, after such deductions were made. As conclusions of law the court found that during his lifetime Poyntz had been paid in full, and that he was not entitled to an accounting, that the equities were with the defendant, that the suit be dismissed without prejudice and with leave to defendant to pursue its legal remedies on the note, from which plaintiff appeals, claiming that the court erred in dismissing the suit and in refusing to render a decree as prayed for in the complaint.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John C. Veatch* and *Mr. Oscar Furuset,* with an oral argument by *Mr. Veatch.*

For respondent there was a brief over the names of *Messrs. Bauer & Greene* and *Mr. A. H. McCurtain,* with an oral argument by *Mr. Thos. G. Greene.*

JOHNS, J.—1. The complaint alleges that on November 18, 1910, Poyntz entered the employ of the defendant as its secretary and cashier, and that in consideration thereof the company agreed to pay him "a certain salary each and every month, and in addition to said salary to pay to plaintiff 10% of the net profits realized by defendant from the conducting of the aforesaid business." The defendant admits "that down to about the thirty-first day of December, 1914, defendant paid to plaintiff a certain salary each month and in addition thereto 10% of the net profits of defendant's business." The only evidence of any written contract to pay "10% of the net profits" is the letter of February 28, 1913, and it specifies "ser-

vices for the current year"; that Poyntz should draw a monthly salary of $200, "and at the close of the year's business take 10% of the net profits, * * or, in other words, will guarantee you three thousand dollars ($3,000) for the year's compensation." This letter specifies and refers to the business for "the current year," which would end on December 31, 1913, and, standing alone, could not be construed as a continuing contract. The defendant contends, and there is some testimony tending to show, that on different terms and conditions other yearly contracts were made with Poyntz, but apparently they were lost or misplaced, and none of them were introduced in evidence. The complaint is founded upon the theory that Poyntz had a continuing contract, and that from November 18, 1910, to September 1, 1916, he was entitled to and should have "10% of the net profits" of the company. The testimony is conclusive that up to January 1, 1915, the company paid, and that Poyntz received, a commission on the net profits of the defendant's business, and that for the year 1914 such profits were $1,717.07, upon which he was paid 10% or $171.71. The four lots in Block 205, Couch's Addition to the City of Portland, were purchased on February 1, 1913, upon which the taxes and accrued interest have been paid from and out of the earnings of the corporation. In her reply the plaintiff admits that M. D. Poyntz "had knowledge that the expenses thereon were being paid out of the net profits of defendant's business, and believed that he would become entitled to and receive a 10% interest in said property when the same was paid for." Poyntz was the cashier and bookkeeper of the defendant and had knowledge, control, and supervision of the entries in the books, and the method and manner

in which the books were kept and the entries made. The lots were purchased for the use and benefit of the company, and to be used in connection with, and as a part of, its business. The testimony shows that it was a bad investment, and that after Poyntz left its employ the company offered to sell the property at a loss of $5,000 and to pay him a commission of $1,000 if he would find a purchaser. In that transaction there would have been an actual loss of $6,000 to the company. On January 1, 1915, Poyntz was paid his 10% of the profits for the year 1914. This was nearly two years after the purchase of the lots in February, 1913. During all of that time he had charge of the books, prepared the statements and trial balances, and no entry was ever made which would tend to show that Poyntz had, or claimed to have, a 10% interest in the money which was paid on account of taxes or the interest which was paid on the purchase price of the lots. The only written evidence of his right to 10% of the profits is the letter of February, 1913, which clearly shows that it was a contract for "the current year." In the ordinary course of business it would be usual and customary to have a final settlement at the end of the current year for the previous year's business, and the fact that on January 1, 1915, based upon his own records and statements, Poyntz was paid $171.71 as 10% of the profits for the previous year's business, is strong evidence that such annual settlements were made, and that he did not then have, or claim to have, any share in the money which the company paid out on account of taxes or interest on the lots. Again, the testimony is undisputed that he did not make any such claim until after he left the employ of the company on September 1, 1916. There is no evidence that the com-

pany prior to that time ever knew of, or in any way recognized, his present claim, and the only testimony on the part of plaintiff concerning such claim relates to conversations between Poyntz and his wife and the witness Charles G. Hayden, who was Poyntz' intimate friend from 1910 to 1916. When analyzed, Hayden's testimony is confined to a conversation had with Poyntz in 1916 after this suit was commenced, in which Poyntz, referring to the four lots, said:

"He had anticipated that he would get some of the benefits from that purchase; that the plan had been that they were to put up a building on this new property and do away with the old barn, sell the property down there, in which case he would come in for quite a substantial portion of the profits on it."

That does not tend to prove plaintiff's case. The testimony of Mrs. Poyntz as to such conversations is, in substance, that:

"He absolutely thought the contract was in effect; * * that that 10% of the profits contract stood and something could be expected from that. * * He expected to share in some way in the interest in this property. * * He said that he could not tell how much would come from that because the business had not been as prosperous as it had been before, and he could not say whether there would be anything. from the profits, but he expected there would be something. * *

"Q. The fact of the business, Mrs. Poyntz, all you know about this case, and what you have testified to here to-day, is simply your impressions or memory of what your husband told you in his lifetime?

"A. Yes; what he told me and what impression I have received from what his understanding was; * * that he expected that if the property was used, or in the event that they did not build on it and it was later sold, that he would share in the profits."

There is no evidence that the property was sold, and the record shows that there was a shrinkage in

value of at least $6,000. Upon the theory of either the complaint or reply, there is a failure of proof.

The decree is affirmed.    AFFIRMED.

McBRIDE, BEAN, and BROWN, JJ., concur.